**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JENNIFER SCHROF

    Plaintiff

    v.          *      Civil No. BPG-22-1533

CLEAN EARTH, INC.

    Defendant

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Currently pending before the court is defendant's Motion to Dismiss Plaintiff's Amended Complaint ("defendant's Motion") (ECF No. 30), plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Her Amended Complaint ("plaintiff's Opposition") (ECF No. 38), and defendant's Reply in Support of Its Motion to Dismiss Plaintiff's Amended Complaint ("defendant's Reply") (ECF No. 39). The issues are fully briefed, and no hearing is necessary. Loc. Rule. 105.6. For the reasons discussed herein, defendant's Motion is granted in part and denied in part.

## I.    BACKGROUND

Jennifer Schrof ("plaintiff") was employed by defendant Clean Earth, LLC ("defendant") as an outside salesperson from October 2006 until she resigned in April 2021. (ECF No. 29 at ¶¶ 6, 60). Plaintiff alleges the following facts in her Amended Complaint. As an outside salesperson, plaintiff was tasked with (1) developing new business and accounts, (2) working on pricing and bidding projects, and (3) helping to collect payment. (Id. at ¶ 7). Plaintiff was the sole female outside salesperson employed by defendant. (Id. at ¶ 59). Plaintiff and the several male outside salespersons "had the same duties and responsibilities," and "were all subject to the same

commission plan." (Id. at ¶¶ 8-9).  In 2019, defendant was acquired by Harsco Corporation, which plaintiff alleges resulted in a change to plaintiff's "entire sales chain of command and work environment."  (Id. at ¶¶ 14-15)

In 2020, plaintiff's revenue goal was twenty-four million dollars.  (Id. at ¶10).  All other outside salespeople had goals of fourteen million dollars or less.  (Id.)  Plaintiff and one other outside salesperson, Bob Simms, met their 2020 sales revenue goal.  (Id. at ¶¶ 18-20).  In June 2020, however, plaintiff realized that there were "significant and improper discrepancies in connection with her commission payments." (Id. at ¶ 16).  Defendant's commission plan provides that "the company would holdback 20% of the commissions and overages until an outside salesperson hit their sales revenue objective, [a]t which point the holdbacks would be paid to the salesperson." (Id. at ¶ 17).  While Mr. Simms received all of the overages and holdbacks to which he was entitled, plaintiff alleges that defendant failed to pay plaintiff any commission holdbacks or overages.  (Id. at ¶¶ 21, 22).

On June 25, 2020, plaintiff emailed the Vice President of Sales, James Hull, regarding the "discrepancies" in her commission, but Mr. Hull did not respond.  (Id. at ¶ 23).  Plaintiff alleges that she communicated her concern regarding the discrepancies in her commission repeatedly throughout 2020.  (Id. at ¶¶ 24, 38-40).  That same year, and for the first time in her fifteen-year career at defendant company, plaintiff received an "average" rating on her performance evaluation. (Id. at ¶ 25).  In violation of company policy Mr. Hull failed to meet with plaintiff to discuss her evaluation.  (Id.)  Plaintiff maintains that she was the only outside salesperson who met her revenue quota and received an "average" rating, and further, that Mr. Simms received an "above-average" rating or better on his 2020 performance evaluation.  (Id. at ¶¶ 26-27).

On January 27, 2021, plaintiff was instructed to provide the Assistant Vice President of Sales, Richard Crawford, with a list of key accounts that she wanted to keep.  (Id. at ¶ 28).  On February 26, 2021, plaintiff's Sales Manager, Alan Hershkowitz, informed her that defendant had taken over several of her accounts, including the Munoz account—one of her biggest accounts— and made them "house accounts."  (Id. at ¶¶ 29-30, 33).  The Munoz account alone generated an annual income of approximately $100,000 for plaintiff.  (Id. at ¶ 32).  Further, plaintiff learned that "leads generated by inside sales in her territory [and no other] were now deemed 'house accounts' which, in turn, deprived her of significant compensation and opportunities."  (Id. at ¶¶ 35-36).

Plaintiff alleges that she made numerous attempts to address her concerns with various supervisors, including Mr. Hull and Mr. Hershkowitz.  On February 29, 2021, plaintiff emailed Mr. Hershkowitz regarding her concerns, but received no response.  (Id. at ¶ 37).  On February 15, 2021, Mr. Hull promised to address plaintiff's concerns by February 19, 2021, but failed to do so. (Id. at ¶ 41).  On March 5, 2021 plaintiff again complained about the removal of her accounts to Mr. Hull, but received no response.  (Id. at ¶ 38).  Finally, on March 15, 2021, plaintiff had a phone call with Mr. Hull, who stated that he "still had not reviewed the commission issue and did not have an answer," but denied plaintiff's allegations that defendant was "trying to get rid of her." (Id. at ¶ 43-45).

Around this time, Messrs. Hull and Hershkowitz informed plaintiff that they had received client complaints about her, but refused to provide client names or specific complaints.  (Id. at ¶¶ 46-47).  On April 14, 2021, plaintiff was informed that she would need to engage in daily sales calls with Messrs. Hull and Hershkowitz.  (Id. at ¶ 50).  Plaintiff alleges that there were no performance issues which necessitated daily calls, that no other outside salesperson was subjected

to daily calls, and that "[t]he daily sales calls made no sense because [plaintiff] had been a top sales performer year in and year out for [defendant]."  (Id. at ¶¶ 51-53).  Plaintiff suggests that the calls were actually intended to humiliate and demoralize her and encourage her to resign.  (Id. at ¶¶ 54, 60).  Plaintiff resigned from her employment with defendant sometime thereafter.  (Id. at ¶ 60).

On June 22, 2022, plaintiff filed a four-count Complaint in this court, alleging violations of both federal and state anti-discrimination law.  (ECF No. 1).  On September 1, 2022, defendant filed a Motion to Dismiss plaintiff's Complaint.[1]  (ECF No. 24).  In response, plaintiff filed an Amended Complaint, which alleges four Counts: (I) sex discrimination in violation of the Maryland Fair Employment Practice Act ("MFEPA"), Maryland Code, State Government Article, § 20-606, (II) wage discrimination in violation of the Maryland Equal Pay for Equal Work Act ("MEPA"), Maryland Code, Labor & Employment Article, § 3-301, et seq., (III) retaliation in violation of the MFEPA, and (IV) constructive discharge in violation of the MFEPA.  (ECF No. 29).  Defendant moves to dismiss all counts of plaintiff's Amended Complaint.  (ECF No. 30).

## II.    STANDARD OF REVIEW

Defendant moves to dismiss all counts of plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint.  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  When ruling on such a motion, the court must "accept[] all well-pleaded allegations in the

---

[1] On October 17, 2022, the court issued an Order denying as moot defendant's Motion to Dismiss the original complaint as a result of the filing of plaintiff's Amended Complaint.  (ECF No. 32).  The filing of an amended complaint supersedes the original complaint and renders it of no effect.  See Young v. City of Mt. Rainer, 238 F.3d 567, 573 (4th Cir. 2001).

plaintiff's complaint as true" and "draw[] all reasonable factual inferences from those facts in the plaintiff's favor." Id. at 244. Nonetheless, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Rather, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678 (internal citation and quotation marks omitted). A plaintiff satisfies this standard not by forecasting evidence sufficient to prove the elements of the claim, but by alleging sufficient facts to establish those elements. Walters, 684 F.3d at 439. Accordingly, "while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.  DISCUSSION

Defendant moves to dismiss all counts of plaintiff's Amended Complaint. (ECF No. 30 at 1). Specifically, defendant contends that plaintiff fails to state a discrimination claim pursuant to either the MFEPA or the MEPA because she does not allege that the commission discrepancies were the result of unlawful sex discrimination and she fails to identify an appropriate male comparator. (Id. at 2). In addition, defendant argues that plaintiff fails to allege a protected activity or an adverse employment action necessary to state a plausible retaliation claim. (Id. at 3). Finally, defendant suggests that constructive discharge cannot serve as a standalone claim, and that plaintiff's Amended Complaint does not allege facts suggesting constructive discharge. (Id. at 5). Plaintiff responds that the Amended Complaint alleges (1) three suitable male comparators, (2) a

protected activity and an adverse employment action, and (3) intolerable working conditions sufficient to state an independent constructive discharge claim.  (ECF No. 38 at 1-3).

### A. <u>Sex Discrimination (Count I) and Wage Discrimination (Count II)</u>

Defendant moves to dismiss Counts I and II of plaintiff's Amended Complaint which allege sex discrimination in compensation in violation of the MFEPA and wage discrimination in violation of the MEPA, respectively, stating that plaintiff fails to allege that she received lower wages than a male comparator, and identify a suitable comparator who performed the same work as plaintiff.  (ECF No. 30-1 at 5-6).  Plaintiff responds that the Amended Complaint identifies three specific male comparators and includes sufficient factual allegations as to their job responsibilities and plaintiff's disparate treatment.  (ECF No. 38 at 5-6).  Because defendant asserts the same arguments with respect to Counts I and II of plaintiff's Amended Complaint, the court examines these counts together.

#### i. <u>Sex Discrimination (Count I)</u>

Defendant moves to dismiss plaintiff's sex discrimination claim, stating that plaintiff fails to allege facts establishing that she and the male comparators were similarly situated.  (ECF No. 39 at 4).  Plaintiff asserts that she and the male comparators identified in the Amended Complaint performed the same work.  (ECF No. 38 at 9).  The MFEPA provides, in relevant part, that "[a]n employer may not . . . discriminate against any individual with respect to the individual's compensation . . . or privileges of employment because of . . . sex[.]"  Md. Code., State Gov't § 20-606(a)(1)(i).  The MFEPA is "the state law analogue of" Title VII, and is based in large part on Title VII.  <u>Doe v. Catholic Relief Servs.</u>, No. CCB-20-1815, 2022 WL 3083439, at *8 (D. Md. Aug. 3, 2022) (quoting <u>Schwenke v. Ass'n of Writer & Writing Programs</u>, 510 F. Supp. 3d 331, 335-36 (D. Md. 2021)).  Accordingly, when interpreting MFEPA, the court often applies federal

caselaw arising under Title VII.  Id.  The requisite level of similarity between a plaintiff and her comparators is "more relaxed" under Title VII than under the Equal Pay Act.  Alexander v. Marriott Int'l, Inc., No. RWT-09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011).  Thus, to plead a claim of sex discrimination in compensation, a plaintiff must demonstrate only that "she is female, i.e., a member of a protected class, and that the job she occupied was similar to higher paying jobs occupied by males."  Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994).  As to the first element, plaintiff, a woman, clearly alleges her membership in a protected class.  (ECF No. 29 at ⁋ 59).

As to the second element, defendant's primary contention is that plaintiff fails to plead facts identifying a similarly situated male employee.  (ECF No. 30-1 at 6).  Plaintiff responds that as outside salespeople, she and the male comparators identified in her Amended Complaint performed the same work.  (ECF No. 38 at 6).  For purposes of  an MFEPA claim "[e]mployees are similarly situated when they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Hammoud v. Jimmy's Seafood, Inc., 618 F. Supp. 3d 219, 234 (D. Md. 2022) (quoting Haywood v. Locke, 387 Fed. App'x 335, 359 (4th Cir. 2010)).  At the motion to dismiss stage, a plaintiff "is not required as a matter of law to point to a similarly situated [male] comparator in order to succeed on a . . . discrimination claim."  Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 545 (4th Cir. 2003).  Instead, because questions about comparators are fact-intensive and should not be resolved at the pleading stage, plaintiff need only allege enough facts to permit a plausible inference that she was discriminated against on the basis of sex.  Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

Here, plaintiff's Amended Complaint adequately identifies specific male comparators and draws a parallel between her job responsibilities and those of the male comparators. "[A]t the motion to dismiss stage, the plaintiff should [ ] identify the proposed comparator and establish a plausible basis for believing [the employee was] actually similarly situated." See Gaines v. Baltimore Police Dep't, 2023 WL 2185779, at *12 (internal citation omitted). Plaintiff's Amended Complaint identifies Casey Krusey, Karl Elliot, and Bob Simms as male outside salespeople employed by defendant. (ECF No. 29 at ¶¶ 8, 59). Plaintiff alleges that she and the male comparators performed "the same duties and responsibilities," which she lists as "develop[ing] new business and accounts; [ ] work[ing] on pricing and bidding projects; work[ing] on getting projects approved for credit; coordinat[ing] day-to-day issues with project[s]; and help[ing] collect payment." (ECF No. 29 at ¶¶ 7-8). Further, it is reasonable to infer from the allegations of the Amended Complaint that plaintiff and the male comparators reported to the same supervisors. Plaintiff alleges that she and the other male comparators were required to have annual performance evaluation meetings with Mr. Hull and that the male comparators actually did meet with Mr. Hull. (Id. at ¶ 25). At this stage of the proceedings, and in light of the relaxed requirements for MFEPA claims, plaintiff states a plausible claim of sex discrimination in violation of the MFEPA. Accordingly, the court denies defendant's Motion as to Count I.

**ii. Wage Discrimination (Count II)**

Count II of plaintiff's Amended Complaint alleges wage discrimination in violation of the MEPA. (ECF No. 29 at ¶¶ 70-74). Under the MEPA, an "employer may not discriminate . . . by paying a wage to employees of one sex . . . at a rate less than the rate paid to employees of another sex . . . if both employees work in the same establishment and perform work of comparable character or work on the same operations, in the same business, or of the same type." Md. Code.,

Lab. & Empl. § 3-304(b)(1)(i).  The MEPA was modeled after the federal Equal Pay Act, and "courts have applied the same analysis in reviewing MEPA and EPA claims" because "[t]he MEPA essentially mirrors . . . the EPA."  Cohens v. Md. Dep't of Hum. Res., 933 F. Supp. 2d 735, 745 (D. Md. 2013) (internal citation omitted).  To state a claim for relief, plaintiff must demonstrate that: (1) the employer pays different wages to employees of a different sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, and which are all performed under similar working conditions.  Spencer v. Virginia State Univ., 919 F.3d 199, 203 (4th Cir. 2019) (citing EEOC v. Maryland Ins. Admin., 879 F.3d 114, 120) (4th Cir. 2018)).  A plaintiff's comparison "must be made factor by factor with a specific male comparator," rather than a "hypothetical male with a composite average of a group's skill, effort, and responsibility."  Kramer v. Bd. of Educ. of Baltimore Cnty., 788 F. Sup. 2d 421, 428 (D. Md. 2011) (citation omitted).  A plaintiff must allege more than job titles, but rather "must show that she and her male counterpart performed substantially equal work in terms of 'skill, effort, and responsibility."  Glunt v. GES Exposition Servs., Inc., 123 F. Supp. 2d 847, 856 (D. Md. 2000) (citation omitted).  In determining whether jobs are substantially equal for purposes of the MEPA, however, "a plaintiff need not show that her position and that of her male comparator are identical in every respect."  Id.

As to the first element, whether employees of a different sex are paid different wages, defendant argues that plaintiff's Amended Complaint contains no information regarding the wages received by the male outside salespeople.  (ECF No. 30-1 at 8).  Defendant contends that because plaintiff alleges that all outside salespeople are subject to the same commission plan, she fails to allege facts supporting her allegation that she received lower wages.  (ECF No. 30-1 at 8).  Plaintiff responds that while the commission plan was facially neutral, it was applied in a discriminatory manner such that she was paid at a lower rate than her male comparators  (ECF No. 38 at 6, 6 n.1).

The MEPA defines "wages" as "all compensation for employment."  Md. Code, Lab. & Emp., §
3-301 (d)(1).  Thus, where an employee is paid in commission rather than a salary, the commission
rate must be equal.  Keziah v. W.M. Brown & Son, Inc., 888 F.2d 322, 325 (4th Cir. 1989).

     Plaintiff alleges that while she and the male outside salespeople were all subject to the same
commission plan, only Mr. Simms was paid overages and holdbacks upon meeting his 2020
revenue goal.  (Id. at ¶¶ 9, 19-21).  Plaintiff, who also met her 2020 revenue goal, was not paid
any overages or holdbacks.  (Id. at ¶¶ 18, 22).  Contrary to defendant's assertion, plaintiff need not
allege her or her male comparators respective salaries to survive a motion to dismiss.  Kling v.
Montgomery Cnty., No. PWG-15-123, 2016 WL 3940237, at *6 ("Although [plaintiff] has not
alleged their respective specific salaries, the salary ranges are significantly different, . . . which is
sufficient to survive a motion to dismiss").  As defendant notes, for purposes of a wage
discrimination claim, the court considers the rate of commission, not the total compensation.  (ECF
No. 30-1 at 10) (citing Bence v. Detroit Health Corp., 712 F.2d 1024 (6th Cir. 1983)).  Plaintiff's
Amended Complaint clearly alleges that while she was supposed to be paid at a rate equal to that
of the male outside salespeople, she was not paid in accordance with that plan.  (ECF No. 29 at
¶ 9).  Instead, plaintiff alleges that while male outside salespeople who met their goal received the
20% commission and overages to which they were entitled, she did not receive that commission
because of her sex.  (Id.)  It is reasonable to infer from this allegation that because plaintiff received
nothing after meeting her revenue goal, and Mr. Simms received 20% of the commission and
overages held back until he met his sales goal, she was paid less than Mr. Simms.  Because the
allegations of plaintiff's Amended Complaint give rise to the reasonable inference that she was
paid lower wages than her male comparators, she satisfies the first element of a wage
discrimination claim.

10

As to the second element, whether plaintiff identifies a comparator who performs equal work on jobs requiring equal skill, effort, and responsibility, defendant argues that plaintiff fails to draw a sufficient parallel between her work and that of the other male outside salespeople. (ECF No. 30-1 at 13). Plaintiff responds that she and the three male comparators performed the same work, had the same supervisors, were subject to the same commission plan, and were comparable in all material respects. (ECF No. 38 at 6). For purposes of the Equal Pay Act, while the similarity requirement is more exacting than that under Title VII, "a plaintiff need not show that her position and that of her male comparator are identical in every respect." Kramer v. Bd. of Educ., 788 F. Supp. 2d 421, 428 (D. Md. 2011). The primary inquiry is whether plaintiff can show that "she and her male counterpart performed substantially equal work in terms of 'skill, effort, and responsibility.'" Id. at 429 (quoting Glunt, 123 F. Supp. 2d 847, 856 (D. Md. 2000)). For the purposes of a motion to dismiss, plaintiff's allegation that she and her male comparators performed the "same duties and responsibilities" adequately alleges equal work. Id.

Defendant argues that plaintiff and her comparators could not have performed equal work because plaintiff's 2020 revenue goal was $24 million and the other male comparators had revenue goals of $14 million or less. (ECF No. 30-1 at 13 (citing ECF No. 29 at ⁋ 10)). Defendant asserts that plaintiff's larger goal implies that she was assigned to a specific territory and her Amended Complaint does not address to which territories her comparators were assigned. (ECF No. 30-1 at 13). Contrary to defendant's assertion, the MEPA "does not require exact identity between the plaintiff's job and that of her comparators," but rather that the jobs share a "common core of tasks." Kramer, 788 F. Supp. 2d at 429 (quoting Brewster v. Barnes, 788 F.2d 985, 991 (4th Cir. 1986)). Where plaintiff's work is not identical to the work of her comparators, the court determines whether the differences render the work "substantially different." Id. Notwithstanding that

plaintiff's revenue goal was $24 million, the Amended Complaint alleges that plaintiff performed the same work, had the same responsibilities, and reported to the same supervisors as her male comparators. (ECF 29 at ¶¶ 8-9, 25). Further, defendant makes no substantive argument and has failed to point to any caselaw which states that salespeople from different territories who perform the same work are not similarly situated for purposes of a MEPA claim. At this stage, accepting the allegations of plaintiff's Amended Complaint as true, the court denies defendant's Motion to Dismiss as to Count II.

### B. Retaliation (Count III)

Defendant argues that plaintiff fails to state a retaliation claim pursuant to the MFEPA because she has not alleged a protected activity or an adverse employment action. (ECF No. 30-1 at 14-15). Plaintiff responds that her verbal complaints of discrimination constitute protected activity and that in response to her complaints, defendant engaged in adverse employment action. (ECF No. 38 at 11-14). "To establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she was engaged in a protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action." Lowman v. Md. Aviation Admin., No. JKB-18-333, 2019 WL 133267, at *7 (D. Md. Jan. 8, 2019) (internal citation omitted).

As to the first element, whether plaintiff engaged in a protected activity, defendant argues that plaintiff fails to allege that she told supervisors she believed the commission discrepancies were the result of unlawful sex discrimination. (ECF No. 30-1 at 15). Plaintiff responds that she complained to supervisors about sex discrimination in her compensation, and attaches an affidavit in support of her Amended Complaint. (ECF No. 38 at 11). "Protected activity" for purposes of a retaliation claim "can take the form of either opposing a practice prohibited under Title VII,"

(i.e., the "opposition clause") or "making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII," (i.e., the "participation clause"). Pitter v. Community Imaging Partners, Inc., 735 F. Supp. 2d 379, 395 (D. Md. 2010). "An employee's complaint about an employer's allegedly discriminatory conduct, whether through formal or informal grievance procedures, constitutes protected oppositional activity." Edgewood Mgmt. Corp. v. Jackson, 66 A.3d 1152 (Md. Ct. Spec. App. 2013). "Although Title VII does not protect general complaints of unfair treatment, an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct." Romeo v. APS Healthcare Bethesda, Inc., 876 F. Supp. 577, 588 (D. Md. 2013) (citation omitted).

Defendant contends that the court should not consider plaintiff's affidavit because it seeks to add material facts missing from plaintiff's Amended Complaint. (ECF No. 39 at 2). The court agrees, and does not consider plaintiff's affidavit. See Lindsey-Grobes v. United Airlines, Inc., No. 14-857, 2014 WL 5298030, at *5 (D. Md. Oct. 14, 2014). The court does consider, however, plaintiff's Charge of Discrimination filed with the Maryland Commission on Civil Rights. (ECF No. 38-1 at 3-4). "Courts commonly consider [ ] charges as integral to a plaintiff's Complaint, i.e., effectively a part of the pleading, even if the [ ] charge is not filed with the Complaint." Bowie v. Univ. of Md. Med. Syst., No. ELH-14-3216, 2015 WL 1499465, at *3, n.4 (D. Md. Mar. 31, 2015). Plaintiff's Charge specifically alleges that she told Mr. Hull, her supervisor, that she believed the disparity in her commission pay was the result of discrimination. (ECF No. 38-1 at 3). Thus, plaintiff's informal complaints satisfy the first element of a prima facie case of retaliation.

As to the second element, whether plaintiff suffered an adverse employment action, plaintiff's Amended Complaint alleges three adverse employment actions, including: (1) the "average" rating on her 2020 performance evaluation, (2) required participation in daily sales calls with her supervisors, and (3) loss of large, profitable key accounts.  (ECF No. 29 at ¶¶ 25, 29-35, 50).  An adverse employment action is one that "'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"  Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)).  "Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'"  Booth v. Cnty. Exec., 186 F. Supp. 3d 479, 485 (D. Md. 2016) (citing Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999)).

Defendant argues that neither plaintiff's "average" performance evaluation, nor her required participation in daily sales calls constitute an adverse employment action because neither had a negative impact on plaintiff's job.  "[A] poor performance rating does not in itself constitute an adverse employment action under Title VII."  Jeffers v. Thompson, 264 F. Supp. 2d 314, 330 (D. Md. 2003) (internal citation omitted).  If plaintiff can demonstrate that her employer relied upon the performance evaluation "for a true adverse employment action (e.g., discharge, demotion, etc.)," however, it may constitute an adverse employment action.  Id.  Viewing the facts in the light most favorable to plaintiff, even if the "average" performance evaluation is considered a poor performance rating, plaintiff alleges no resulting demotion or discharge amounting to an adverse employment action.  Similarly, while the required daily calls may have made plaintiff unhappy, they did not "materially alter the term, conditions, or benefits of employment."  Id. at 329 ("Title VII does not remedy everything that makes an employee unhappy").

Defendant presents no argument regarding plaintiff's allegation that several of her outside accounts, including the large, profitable Munoz account, were reclassified as house accounts. In the Amended Complaint plaintiff alleges that defendant inexplicably removed one of plaintiff's biggest accounts, which she had originated and developed over the course of several years, in addition to other valuable and long-term accounts, as well as inside sales leads. (ECF No. 29 at ¶¶ 29-35). Unlike the negative performance evaluation and required daily calls, the removal of plaintiff's sales accounts and the associated loss of significant compensation is an adverse employment action. A decrease in pay is one of the hallmarks of adverse employment action. See e.g., Pollard v. Baltimore Cnty. Bd. of Educ., 65 F. Supp. 3d 49, 454 ("The 'typical' examples [of adverse employment action] are 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'"). Accepting plaintiff's allegations as true, defendant's decision to reclassify the Munoz account as a house account decreased plaintiff's annual compensation by $100,000. (ECF No. 29 at ¶ 32). Because plaintiff alleges a loss of compensation, and in the absence of any argument to the contrary by defendant, plaintiff satisfies the second element of a prima facie case of retaliation.

As to the third element, whether a causal connection exists between the protected activity and the alleged adverse employment action, defendant offers no argument. "Although [a] prima facie showing of causation requires little proof, the plaintiff must show that it is more likely than not that her employer took the adverse employment action in retaliation for her protected activity." Romeo, 876 F. Supp. 2d 577, 588 (D. Md. 2012) (internal citation omitted). Plaintiff can demonstrate a prima facie case of retaliation by presenting evidence that defendant took adverse employment action against her "shortly after learning of the protected activity." Plaintiff alleges that on June 25, 2020, and throughout 2020, she questioned her supervisors about the erroneous

and discriminatory discrepancies in her commission and the "biased and discriminatory 'average' rating" she received on her 2020 performance evaluation.  (ECF No. 29 at ¶¶ 23-25).  On February 26, 2021, defendant removed several of plaintiff's large accounts.  (Id. at ¶ 29).  Viewing the facts in the light most favorable to plaintiff, and in the absence of any argument from defendant, the close temporal proximity between plaintiff's complaints of discrimination and the alleged adverse employment action permits a reasonable inference of retaliation.  Accordingly, plaintiff states a plausible retaliation claim, and the court denies defendant's Motion on Count III.

### C. Constructive Discharge (Count IV)

Defendant contends that constructive discharge is not an independent claim, such that Count IV of plaintiff's Amended Complaint should be dismissed.  (ECF No. 30-1 at 16-17). Plaintiff responds that the Supreme Court recognized an independent constructive discharge claim in Green v. Brennan, 578 U.S. 547 (2015).  (ECF No. 38 at 14-15).  Plaintiff is mistaken.  While Green recognized that constructive discharge is an adverse action that can serve as the "matter alleged to be discriminatory" for purposes of determining when the limitations period begins to run, it is not an independent cause of action which entitles plaintiff to relief.  See Harris v. Charles E. Smith Life Cmtys., No. MJM-21-1242, 2022 WL 4777592 (D. Md. Oct. 3, 2022) ("It is well established that constructive discharge is a form of adverse employment action."); Lloyd v. Riveredge Operating Co., LLC, No. GLR-20-3162, 2021 WL 2550495, at *4 (D. Md. June 21, 2021) (citing Green, 578 U.S. at 556) ("[C]onstructive discharge is not a standalone claim.  Rather, constructive discharge is an adverse action which can fulfill [the adverse employment action] element of [plaintiff's] discrimination or retaliation claims."); Crockett v. SRA Int'l, 943 F. Supp. 2d 565, 576 (D. Md. 2013) ("[C]onstructive discharge is not a standalone 'claim.'"); Cohens v. Md. Dep't of Hum. Res., No. WDQ-11-3419, 2013 WL 3944451, at *5 n.37 (D. Md. July 30,

2013) ("Constructive discharge is not a standalone claim, but rather can satisfy the element of an adverse employment action in a substantive claim.") (internal quotation marks and citations omitted); Rosa v. Bd. of Educ. of Charles Cnty., Md., No. AW-11-2873, 2012 WL 3715331, at *10 (D. Md. Aug. 27, 2012) ("Constructive discharge is not a claim per se."); Reed v. Action Prods., Inc., No. JKB-12-409, 2012 WL 2711051, at *2 (D. Md. July 6, 2012) ("Constructive discharge, however, is not an independent basis for relief.") (citation omitted).   Because constructive discharge is not an independent cause of action, the court grant's defendant's Motion to Dismiss Count IV.

IV.   **CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss (ECF No. 30) is granted in part and denied in part.   Specifically, defendant's Motion to Dismiss is granted with respect to plaintiff's constructive discharge claim (Count IV) and denied with respect to plaintiff's sex discrimination claim (Count I), wage discrimination claim (Count II), and retaliation claim (Count III).   A separate order will follow.

Date: June 1, 2023

/s/_____
Beth P. Gesner
Chief United States Magistrate Judge