# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JENNIFER SCHROF, | * | Civil Case No. 22-cv-01533-CDA |
| *Plaintiff,* | * |  |
| v. | * |  |
| CLEAN EARTH, INC., | * |  |
| *Defendant.* | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF, JENNIFER SCHROF'S, MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CLEAN EARTH, INC.'S OMNIBUS *IN LIMINE* MOTIONS

**WOLF LEGAL, LLC**
37 Walker Avenue, Second Floor
Pikesville, Maryland 21208
Telephone: (410) 736-8977
*Attorney for Plaintiff*

Kevin Barber, Admitted *Pro Hac Vice*
kbarber@kbarberlaw.com
Peter J. Heck, Admitted *Pro Hac Vice*
pheck@kbarberlaw.com
**BARBER LAW, LLC**
98 Washington Street
Morristown, NJ 07960
Telephone: (973) 401-0064
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

POINT I ....................................................................................................................... 1

    IN RESPONSE TO POINT I, AS PREVIOUSLY RULED, ALAN HERSHKOWITZ'S AND RICHARD CRAWFORD'S RETALIATORY ACTS ARE RELEVANT AND ADMISSIBLE AT TRIAL ........................................................................................... 1

POINT II ..................................................................................................................... 7

    EVIDENCE CONCERNING ACCOUNT REMOVAL AND INSIDE SALES LEAD REMOVAL ARE ADMISSIBLE AT TRIAL.................................................................. 7

POINT III.................................................................................................................. 11

    RESPONDING TO POINT III, EVIDENCE CONCERNING LOSS OF INCOME IS NOT SPECULATIVE AND, THEREFORE, DEFENDANT CLEAN EARTH'S MOTION SHOULD BE DENIED ....................................................................................... 11

POINT IV.................................................................................................................. 13

    RESPONDING TO POINTS IV AND V TO EXCLUDE EVIDENCE, TESTIMONY OR ARGUMENTS OF OTHER EMPLOYEE'S HEARSAY STATEMENTS AND/OR COMPLAINTS ..................................................................................................... 13

POINT V ................................................................................................................... 15

    RESPONDING TO POINT VII:    EVIDENCE REGARDING OTHER OSR'S PERFORMANCE EVALUATIONS IS RELEVANT ....................................................... 15

POINT VI.................................................................................................................. 17

    RESPONDING TO POINT VIII:    EXCLUDE EVIDENCE, TESTIMONY OR ARGUMENTS OF DEFENDANT CLEAN EARTH'S RECORDING POLICY............... 17

POINT VII ................................................................................................................ 20

    RESPONDING TO POINT X:    EVIDENCE REGARDING PLAINTIFF SCHROF'S BUDGETED REVENUE GOAL IS ADMISSIBLE AT TRIAL...................................... 20

POINT VIII ............................................................................................................... 22

    RESPONDING TO POINT XI:    EVIDENCE REGARDING PLAINTIFF SCHROF'S COMPLAINTS CONCERNING UNPAID COMMISSIONS, HOLDBACKS AND OVERAGES ARE ADMISSIBLE AT TRIAL ................................................................ 22

POINT IX................................................................................................................... 24

    RESPONDING TO POINT XII:    DR. DAVID McCLURE WAS IDENTIFIED AS A TREATING PHYSICIAN, HIS MEDICAL RECORDS WERE PRODUCED IN DISCOVERY................................................................................................................ 24

i

POINT X...................................................................................................................................... 28

  PUNITIVE DAMAGES ARE A JURY QUESTION AND BIFURCATION OF THE TRIAL
  IN THIS MATTER IS NOT WARRANTED UNDER THE CONTROLLING LAW........ 28

CONCLUSION ........................................................................................................................... 30

## POINT I

## IN RESPONSE TO POINT I, AS PREVIOUSLY RULED, ALAN HERSHKOWITZ'S AND RICHARD CRAWFORD'S RETALIATORY ACTS ARE RELEVANT AND ADMISSIBLE AT TRIAL

Defendant Clean Earth essentially recasts its motion *in limine* to reargue the viability of the seven (7) materially adverse actions as previously determined by the Court. Docket No. 116 at 31 (detailing seven (7) adverse actions). Defendant Clean Earth seeks to exclude six (6) relevant documents based on the purported "undisputed" fact that James Hull ("Hull") never advised Alan Hershkowitz ("Hershkowitz") and Richard Crawford ("Crawford") about Plaintiff Schrof's discrimination complaint. (Docket No. 142 at 3) Notably, the citations to Hull's deposition testimony do not support this contention. (Id.)[1] More importantly, the Court ruled that issues of material fact precluded summary judgment on the numerous acts of materially adverse conduct supporting Plaintiff Schrof's retaliation claim. (Docket No. 116 at 30-41) The purpose of a motion *in limine* is to resolve questions of the ***admissibility*** of evidence, not to ask the Court to rule on the ***sufficiency*** of the evidence supporting a party's claim or defense or reconsider summary judgment. For the reasons discussed below, Defendant Clean Earth's *in limine* motion fails.

Courts are clear on the limited role and purpose of motions *in limine*: they are not to resolve claims or defenses on the merits as a substitute for a summary judgment motion. See Louzon v. Ford Motor Co., 718 F.3d 556 (6th Cir. 2013). In Louzon, the district court granted the defendant's motion *in limine*, excluding all evidence related to putative comparators after concluding that the individuals identified were not appropriate comparators. Id. at 560-61. The Sixth Circuit reversed, explaining that:

---

[1]     In fact, Mr. Hull testified that he did not recall if he told Hershkowitz or Crawford about Plaintiff Schrof's complaint despite his acknowledgement that all three (3) men were "sharing responsibility to supervise Ms. Schrof." (Hull Dep. T2, 290:4-290:20) (Docket No. 140-1, Ex. D)

1

> A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered. Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions. In other words, the motion in limine is an evidentiary device that provides a useful adjunct to other devices for truncating the trial such as motions for summary judgment. (internal citations and quotations omitted).

Id. at 561. The court reasoned that *in limine* motions are limited because "[a]llowing a party to litigate matters that **have been or should have been resolved at an earlier stage** not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment." Id. (emphasis added).

Finally, the Court rejected defendant's Fed. R. Evid. 401 and 402 arguments:

> Ford nonetheless attempts to infuse into this motion an evidentiary matter by arguing that this evidence was "irrelevant and inadmissible under Fed. R. Evid. 401 and 402 because that evidence does not make it any more or less probable that [Louzon] suffered national origin or age discrimination." However, this argument rests entirely on the presumption that Louzon would not be able to make out a prima facie case of discrimination, which if true would render null the need for any evidentiary rulings. Additionally, if these tactics were sufficient, a litigant could raise any matter in limine, as long as he included the duplicative argument that the evidence relating to the matter at issue is irrelevant. Where, as here, the motion in limine is no more than a rephrased summary-judgment motion, the motion should not be considered. (Internal citations omitted).

Id. at 562-563.

Similarly, in Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc., 652 F. Supp. 1400, 1401 (D. Md. 1987), the late Judge Smalkin was critical of an attempt to litigate the merits of a damages claim through a motion *in limine* and detailed the limitations of a motion *in limine*:

2

> [A] motion in limine is not the appropriate procedural vehicle by which to raise these issues. The office of a motion in limine … is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial. The motion in limine is, in my opinion, *not* a device to narrow or fix the issues to be tried. The Federal Rules of Civil Procedure provide at least three motions designed to narrow or fix the issues for trial—motions to dismiss, for judgment on the pleadings, and for summary judgment—and motions in limine are not among them…This Judge has noticed an increasing tendency for last-minute summary judgment motions … to sneak up in limine clothing shortly before trial, after the deadline for orderly filing of summary judgment motions has passed. It is a practice strongly to be discouraged.

See also Mowbray v. Zumot, No. CV BEL-06-1606, 2008 WL 11509337, at *1 (D. Md. July 29, 2008) (rejecting defendant's argument regarding proximate cause of damages made in a motion in limine, stating "[a]s the courts have consistently recognized, however, the proper vehicle for making such claims is not a motion in limine but rather a motion for summary judgment."); Brightview Grp., LP v. Teeters, No. CV SAG-19-2774, 2022 WL 846208, at *9 (D. Md. Mar. 22, 2022) (denying plaintiff's motion in limine regarding  affirmative defenses finding that request was actually motion to strike or for summary judgment and "not proper aims of a motion in limine"); TVT Records v. Island Def Jam Music Grp., 250 F. Supp. 2d 341, 344-45 (S.D.N.Y. 2003) ("Thus, in the guise of addressing limited evidentiary issues, the parties' motions in limine would effectively serve as a form of advance trial of substantive portions of the case ... the Court deems them impermissible[.]"); Biogen Inc. & Biogen Ma Inc. v. Sandoz Inc., No. CV 22-1190-GBW, 2025 WL 1260954, at *9 (D. Del. May 1, 2025) (denying motion *in limine* which attempted to argue Daubert issue well after the deadline for filing Daubert motions and noting that "[m]otions *in limine* are not vehicles by which to circumvent deadlines.").  For these reasons, Defendant Clean Earth's *in limine* motion should be denied.

3

With Plaintiff Schrof's retaliation claim, the Court held that Plaintiff Schrof presented disputed issues of material fact on seven (7) acts of materially adverse retaliation:

> Mr. Crawford directed Plaintiff to provide a list of key accounts she wanted to keep on January 27, 2021; (2) Plaintiff received a 2020 "meets expectations" evaluation dated February 1, 2021; (3) around February 2021, management notified Plaintiff that two of her key accounts would be removed; (4) management stopped sending Plaintiff inside sales leads around February 2021; (5) Mr. Hull and Mr. Hershkowitz told Plaintiff she received customer complaints around March 2021; (6) management started daily calls with Plaintiff on or about Apri114, 2021; and (7) constructive discharge.  Pl.'s MSJ Opp'n, at 25-27, 33-40.

(Docket No. 116 at 31)  The material acts were attributed to Hull, Hershkowitz and Crawford based on the Court's conclusion that Plaintiff Schrof had "established temporal proximity with at least some, if not all, of the alleged materially adverse actions." (Id. at 40)

As detailed, this holding is amply supported by Defendant Clean Earth's chain of command and the collective manner Hull, Hershkowitz and Crawford managed the daily activities of Outside Sales Representatives ("OSRs").  During the relevant time period, Hull was the Vice President of Sales and Marketing for Clean Earth's "Soil and Dredge" Division.  (November 30, 2023 Deposition Transcript of James Hull ["Hull Dep. T1"] at 9:13-10:13) (Docket No. 140-1, Ex. A) Hershkowitz was a Sales Manager.  Hull was the most senior upper manager and Hershkowitz and Crawford were his supervisory subordinates in the chain of command.  (Hull Dep. T1 at 14:24-16:5)  Hull, Hershkowitz and Crawford were all responsible for supervising OSRs, including Plaintiff Schrof, on a daily basis.  (Hull Dep. T1 at 9:9-12:2; December 11, 2023 Deposition Transcript of Alan Hershkowitz ["Hershkowitz Dep. Tr."] at 10:8-13:22 (Docket No. 140-1, Ex. B); December 12, 2023 Deposition Transcript of Richard Crawford ["Crawford Dep. Tr."] at 7:22-8:5) (Docket No. 140-1, Ex. C))  All three (3) supervisors controlled the day-to-day activities of the OSRs including compensation and discipline.  (Hull Dep. T1 at 16:24-17:21; 17:18-17:21;

4

Crawford Dep. Tr. 28:15-28:21)  The shared managerial duties and hierarchy between the three (3) supervisors creates an issue of fact concerning Hershkowitz's and Crawford's knowledge of Ms. Schrof's discrimination complaint, which the Court properly found should be decided by a jury.  See Staub v. Proctor Hosp., 562 U.S. 411 (2011) (Under cat's paw theory, Hull's knowledge and intent impacted the entire decision-making process).  This is particularly true where, as here, Crawford felt "Plaintiff was trying to build a case" against Defendant Clean Earth (Crawford Dep. Tr. at 121:8-124:18) did Hershkowitz believed Plaintiff Schrof was "planting a mine field that required Human Resource involvement" (Hershkowitz Dep. Tr. at 112:1-112:8)  Hershkowitz claimed that Hull contacted human resources in connection with Plaintiff Schrof's complaint because it was his responsibility to do so under the managerial hierarchy.  (Id.)  All of these arguments were raised and rejected at summary judgment and, therefore, the *in limine* motion fails.

As detailed in Point 4 of Plaintiff Schrof's memorandum of law in support of her motions *in limine*, "a supervisor's state-of-mind and credibility are persuasive forms of circumstantial evidence of retaliatory intent.  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 137 (2000) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 517 (1993) ("Proof that defendant's explanation [for a materially adverse retaliation] is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional [retaliation], and it may be quite persuasive.")):

> **suspicion of mendacity)** may," together with the elements of a prima facie case, suffice to show intentional discrimination.  Thus, **rejection of the defendant's proffered reasons** will permit the trier of fact to infer the ultimate facts of intentional discrimination."  Id. at 5110 (emphasis added)

5

Here, Plaintiff Schrof should be permitted to examine Hull, Hershkowitz and Crawford on their knowledge of Plaintiff Schrof's discrimination complaint, the substance and timing of the retaliatory acts, their communications regarding those acts, and other relevant matters:

| 1 | CE601-603 | 2/25/21 Emails regarding Plaintiff Schrof's Key Account reassignment; |
| 2 | CE3621-3625 | 9/14/20 Email string in which Hershkowitz removes accounts from Plaintiff Schrof and has them re-coded as maintenance accounts; |
| 3 | CE3690-3691 | 3/16/21 Email string in which Hull asks that commissions not be paid on Plaintiff Schrof's account; |
| 4 | CE3739-3741 | 10/15/20 Email string concerning re-coding Plaintiff Schrof's accounts; |
| 5 | CE3798-3799 | 3/25/21 Email string in which Plaintiff Schrof confirms to Hershkowitz that he complained about her; and |
| 6 | CE4027-4029 | 1/27/21 Email string from Plaintiff Schrof listing Key Accounts in response to Crawford's request |

Document numbers 1, 3, 5 and 6 are relevant to the veracity and timing of Plaintiff Schrof's retaliation claims, which the Court held assert material issues of fact that must be decided by a jury. This includes the removal of Key Accounts, sales leads, daily calls and constructive discharge. Documents 2 and 4 are relevant to Plaintiff Schrof's state-of-mind, credibility and good faith when she complained of discrimination to Mr. Hull. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 187 (2005). As such, the documents are relevant and probative to the disputed issues of material fact.

**POINT II**

**EVIDENCE CONCERNING ACCOUNT REMOVAL AND INSIDE SALES LEAD REMOVAL ARE ADMISSIBLE AT TRIAL**

In Point II of its *in limine* motion, Defendant Clean Earth regurgitates the same arguments that were rejected on summary judgment. As discussed, on that basis alone, the *in limine* motion should be denied. See, *e.g.*, Docket No. 116 at 35:

> As to the reassignment of accounts and removal of internal sales leads, Defendant contends these are only speculative harms because management only contemplated the reassignment of two of Plaintiff's key accounts, and there is an "inherent uncertainty… whether a lead would result in… a commission for Plaintiff" especially considering Plaintiff's failure to follow up on leads. Def.'s Reply, at 12-13, 16. Viewing the facts in the light most favorable to Plaintiff, the Court finds there is a genuine dispute of material fact whether Clean Earth implemented the reassignment of Plaintiff's key accounts, and whether the reassignment of accounts and removal of internal leads resulted in significant harm to Plaintiff. Allegedly directing Plaintiff to provide a key list of accounts she wanted to keep, removing/reassigning two of Plaintiff's key accounts, and removing Plaintiff's inside sales leads could constitute materially adverse actions because this could have resulted in decreased pay. *See* Yampierre, 2022 WL 3577268, at *34 ("[D]ecrease in pay or benefits, ...constitutes adverse actions.") (quoting Boone, 178 F.3d at 255, abrogated on other grounds by Muldrow, 601 U.S. 346)). ***The parties dispute when the account reassignment process began: Clean Earth cites testimony supporting their claim that the process began in Fall 2020. See Def.'s MS.J, at 6-7; Hull Dep., Tr. 334:20-338:10; Crawford Dep., Tr. 145:17-25; Elliott Dep., Tr. 34:20-43:22, 66:18-70:9. Plaintiff cites testimony that the process began around January 27, 2021. See Pl.'s MSJ Opp'n, at 14; Hull Dep., Tr. 188:2-190:17.*** (Emphasis added)

(Docket No. 116 at 35)

Defendant Clean Earth ignores the above and attempts to exclude documentary evidence because, in its view, the account reassignment process began in November 2020.

First, Defendant Clean Earth seeks to exclude:

7

| 1 | CE4027-4029 | 1/27/21 Email string regarding Plaintiff Schrof's provision of her key accounts to Crawford and Hershkowitz's comments on one account; |
| 2 | CE601-604 | 2/25/21 Email in which Crawford splits Plaintiff Schrof's key accounts with Kaila Ilyes ("Ilyes") |

These documents are relevant to Plaintiff Schrof's retaliation claim and necessary to refute Defendant Clean Earth's proofs on this factual issue.

The same reasoning applies to Defendant Clean Earth's attempt to preclude evidence relating to the removal of sales leads from Plaintiff Schrof. Again, Defendant Clean Earth reiterates the same arguments advanced at summary judgment which were rejected by Your Honor. Based on these arguments, Defendant Clean Earth seeks to exclude what it contends are a "hodgepodge" of fourteen (14) email strings apparently because some of them predate Plaintiff Schrof's discrimination complaint on or about January 14, 2021:

| 1 | CE3761-3762 | 1/2/20 Email claim concerning recoding of Plaintiff Schrof's account; |
| 2 | CE3493-3501 | 1/31/21 Email string in which Ilyes enumerates accounts of Plaintiff Schrof which she wants reassigned to her; |
| 3 | CE3525-2526 | 2/18/20 Email string concerning commissions on projects involving OSR/ISR and Ilyes; |
| 4 | CE2004-2007 | Email string including 1/14/20-2/14/20 emails regarding generator direct commissions; |
| 5 | CE3489-3492 | 4/13/20 email from Ilyes to Hull and Crawford regarding ISR assignments and "OSR>ISR>CSR" responsibilities; |
| 6 | CE3483-3485 | 5/20/20 Email regarding "OSR>ISR>CSR" responsibilities; |
| 7 | CE3739-3741 | 10/15/20 Email string concerning recoding Plaintiff Schrof's accounts to House Accounts; |
| 8 | CE2361; CE2326-2335 | CE2361 is a 3/18/21 email concerning Plaintiff Schrof's ongoing complaint about unpaid generator |

direct commissions.    CE2326-2335 is an email string concerning generator direct commissions;

| 9 | CE509-522 | 6/25/20 to 3/19/21 Email string concerning generator direct commissions; |
| 10 | CE189-192 | 7/23/20 Email string regarding lost job, including Hershkowitz's request that Plaintiff Schrof call to determine why lost; |
| 11 | CE4023-4026 | Email string regarding Plaintiff Schrof's question about why her account was coded for Crawford and Hershkowitz's criticisms; |
| 12 | CE3621-3625 | 9/14/20 Email regarding the changing of Plaintiff Schrof's accounts to house accounts; |
| 13 | CE3739-3741 | 10/15/20 Email string regarding changing Plaintiff Schrof's accounts to house accounts to wake her up; |
| 14 | CE2138-2139 | 11/6/20 Email by Crawford advising of the establishment of Sales Visibility Calls for OSRs; and |
| 15 | Schrof238-352 | Texts between Plaintiff Schrof and Ilyes in 2020-2021 related to work matters. |

As set forth, *infra*, Exhibits 4, 8 and 9 pertain to Plaintiff Schrof's generator direct commission and are relevant to Plaintiff Schrof's state-of-mind, credibility and good faith when she complained to Hull about discrimination.  They are also relevant to the managerial response to her complaint.  This is also true with respect to Exhibits 1, 2, 7, 11, 12 and 13 which pertain to Defendant Clean Earth's recoding and taking away of Plaintiff Schrof's accounts.

Exhibits 3, 5, 6 and 10 are relevant to Defendant Clean Earth's anticipated argument that it took accounts from Plaintiff Schrof when she did not engage in work during 2020 and 2021 and required others to perform her work.  The Court recognized this as a disputed issue of material fact.  (Docket No. 116 at 3-6)  Clearly, Defendant Clean Earth will attempt to justify these acts that Plaintiff Schrof alleges are retaliatory by claiming that it was based upon its management's perception that she was not working in 2020 and 2021.  The documents are relevant to those disputed issues of material fact.

9

For example, Exhibit 14 relates to Sales Visibility Calls ("SVCs") implemented by Crawford.  Defendant Clean Earth will argue that Plaintiff Schrof did not attend a majority of those calls and that she was otherwise unprepared in 2020 and 2021 was part of its defense to the retaliation claim.  There is a disputed issue of material fact regarding Plaintiff Schof's attendance of these calls:  on the one hand, Hull claimed that Plaintiff Schrof missed the majority of those calls; however, Crawford confirmed that Plaintiff Schrof did not miss a "significant amount" of these calls.  (Crawford Dep. Tr. 111:24-112:5) (Docket No. 140-1, Ex. C) (Compare Hull Dep. T1 58:21-59:17; 60:2-61:19; 62:17-63:9).  Thus, the document is relevant to support Plaintiff Schrof's retaliation claim and refute the credibility of Defendant Clean Earth's intended defense.  (Compare Hull Dep. T1 at 58:21-59:17)

Finally, Clean Earth's request that the Court rule on the admissibility of Schrof 238-352 is puzzling.  These are 114 pages of messages/texts between Plaintiff Schrof and Kaila Ilyes ("Ilyes") in 2020-2021 concerning work-related matters.  Counsel for Clean Earth was provided with the opportunity but, chose not to, depose Plaintiff Schrof on these and other text messages.  These texts refute Defendant Clean Earth's allegations concerning Plaintiff Schrof's work engagement and communications with Ms. Ilyes during the time Defendant Clean Earth will contend that Plaintiff Schrof was not engaged in 2020-2021.

In sum, Defendant Clean Earth's attempt to exclude relevant communications regarding the claims and defenses is meritless for the reasons detailed herein and should be denied.

10

**POINT III**

**RESPONDING TO POINT III, EVIDENCE CONCERNING LOSS OF INCOME IS NOT SPECULATIVE AND, THEREFORE, DEFENDANT CLEAN EARTH'S MOTION SHOULD BE DENIED**

Defendant Clean Earth's motion to bar evidence and testimony "of speculative harms" is without merit and ignores, once again, that the Court specifically rejected this contention that the retaliatory removal of accounts and inside sales leads would result "only in speculative harms." (Docket No. 116 at 35)  Defendant Clean Earth asserted the identical non-evidential argument in its summary judgment reply brief.  (Docket No. 108 at 11-12)  The Court rejected the argument in concluding that issues of material fact existed.  (Docket No. 116 at 35):

> Plaintiff's failure to follow up on leads.  Def.'s Reply, at 12-13, 16. Viewing the facts in the light most favorable to Plaintiff, the Court finds there is a genuine dispute of material fact whether Clean Earth implemented the reassignment of Plaintiff's key accounts, and whether the reassignment of accounts and removal of internal leads resulted in significant harm to Plaintiff.  Allegedly directing Plaintiff to provide a key list of accounts she wanted to keep, removing/reassigning two of Plaintiff's key accounts, and removing Plaintiff's inside sales leads could constitute materially adverse actions because this could have resulted in decreased pay.  *See* Yampierre, 2022 WL 3577268, at *34 ("'[D]ecrease in pay or benefits, ... constitutes adverse actions.") (quoting Boone, 178 F.3d at 255, abrogated on other grounds by Muldrow, 601 U.S. 346)).

Defendant Clean Earth's second attempt at summary judgment does not succeed as a result of counsel's self-serving and non-evidentiary explanation of commission runs purportedly paid to Plaintiff Schrof for Munoz and JC Transportation.  (Docket No. 142 at 10)  Nor were these alleged payments detailed in the Affidavit of Financial Analyst Matthew Tulio ("Tulio Affid.") that was submitted in support of the summary judgment motion.

11

As part of this motion, Defendant Clean Earth seeks to exclude two (2) documents:

| | | |
|---|---|---|
| 1 | CE4027-4029 | 1/27/21 Email string from Plaintiff Schrof listing her Key Accounts in response to Crawford's request; and |
| 2 | CE604-602 [sic] | 2/25/21 Email from Crawford regarding the re-assignment of Plaintiff Schrof's Key Accounts |

Both of these documents are relevant to Plaintiff Schrof's asserted adverse action of removing Key Accounts based on her protected activity.

Based on the foregoing, Defendant Clean Earth's Point III *in limine* is meritless and should be denied.

12

**POINT IV**

**RESPONDING TO POINTS IV AND V TO EXCLUDE EVIDENCE, TESTIMONY OR ARGUMENTS OF OTHER EMPLOYEE'S HEARSAY STATEMENTS AND/OR COMPLAINTS**

Defendant Clean Earth seeks to exclude evidence, testimony or arguments relating to Plaintiff Schrof's conversations with other Defendant Clean Earth employees regarding their similar treatment that impacted her state-of-mind, intent and credibility regarding her complaints of discrimination. Defendant Clean Earth's argument rests on the erroneous supposition that these statements are hearsay. However, as discussed below, the statements are not being introduced for the truth of those statements, but rather to show Plaintiff Schrof's state-of-mind and the reasonableness of her discrimination complaint. A limiting instruction is proper.

Statements are not hearsay if they show that "they were made or had some effect on the hearer." United States of America v. Martin, 897 F.2d 1368, 1370 (6th Cir. 1990); Id. at 1372 (*citing* McCormick On Evidence § 249, at 733-34 (E. Cleary Ed. 1984) (statements may be considered non-hearsay if offered to show, for example, the hearer's notice, knowledge, motive, anxiety or reasonableness (or non-reasonableness) of action); Arrington v. E.R. Williams, Inc., 490 F. App'x 540, 543 (4th Cir. 2012) (holding that statements offered for purpose of proving employer's state of mind and not for their truth were not hearsay); Warren v. Tri Tech Lab'ys, Inc., 993 F. Supp. 2d 609, 637 (W.D. Va.), aff'd, 580 F. App'x 182 (4th Cir. 2014) (*citing* Luckie v. Ameritech Corp., 389 F.3d 708, 716 (7th Cir.2004) (finding that third-party statements were not hearsay because they were "offered to show [the employer's] state of mind at the time she was evaluating [the plaintiff's] performance")). This also applies to out-of-court statements of unnamed persons that caused the listener to take certain actions. Martin, *supra*, at 1370

13

("Therefore, the testimony based upon an out-of-court statement of an unnamed person in this case was not hearsay *per se*.").

In this case, as detailed in Defendant Clean Earth's *in limine* motion, Plaintiff Schrof will testify to various discussions with other employees about their discriminatory (females) or more favorable (males) treatment which supported her decision to complain, among other times, in January 2021. These statements are relevant to Plaintiff Schrof's state-of-mind and good faith regarding her complaint of discrimination. Stated differently, Plaintiff Schrof's discussions with these employees about their treatment impacted her decision to complain of discrimination to Hull. A limiting instruction is appropriate.

Based on the foregoing, Defendant Clean Earth's *in limine* motion should be denied.

14

**POINT V**

**RESPONDING TO POINT VII:  EVIDENCE REGARDING OTHER OSR'S PERFORMANCE EVALUATIONS IS RELEVANT**

Defendant Clean Earth's various arguments that evidence of other OSR performance evaluations in 2020 are irrelevant and unfairly prejudicial misses their mark.  As discussed herein, these evaluations are relevant to Hull's state-of-mind and credibility in addressing Plaintiff Schrof's discrimination complaint.

As a threshold matter, Defendant Clean Earth failed to produce all of the 2020 OSR performance evaluations.  (Hull Dep. T1 76:8-8-81:4)  One of the 2020 performance evaluations Defendant Clean Earth did produce was for Todd Calder ("Calder"), another OSR.  Calder, like Plaintiff Schrof, was supervised by Hull, Hershkowitz and Crawford.  Notably, in 2020, Calder had a Budgeted Revenue Goal ("BRG") of $2.9 million as compared to Plaintiff's $23.9 million BRG.  (Hull Dep. T1 84:15-85:2)  Calder did not hit his BRG in 2019 or 2020.  Id.  Plaintiff Schrof met her 2019 BRG of $23.9M and met 97% of her $23.9 BRG in 2020.  Calder received a 3% pay increase for 2020.  Plaintiff Schrof did not.  For his 2020 performance evaluation, Calder received an "exceeds expectations" rating and for each and every one of the "values and behavior" received a "exceeds expectations."  (Hull Dep. T1 83:18-84:5)  On the other hand, Plaintiff Schrof received a "meets expectation" rating.  (Hull Dep. T1 at 71:12-75:15)  Your Honor determined that there were numerous disputes regarding Plaintiff Schrof's 2020 evaluation.  (Docket No. 116 at 11-12; Id. at 33-35 (holding that the 2020 evaluation could constitute a materially adverse action."))

Defendant Clean Earth seeks to exclude Calder's performance evaluation because he is not similarly-situated and not a proper comparator relying on Laing v. Fed. Exp. Corp., 703 F.3d 713, 721 (4th Cir. 2013).  Laing was a summary judgment discrimination claim seeking the dismissal of

15

a claim based on comparator evidence.  Id.  ("Significantly, Laing has not identified any similarly situated FedEx employee -- that is, an employee accused of violating the same company policy but who did not take FMLA leave – who was given more favorable treatment.")  Here, on the other hand, both Plaintiff Schrof and Calder were OSRs with the same supervisory chain of command involved in the performance reviews; all OSRs had the same duties and responsibilities, were subject to the same performance, discipline and conduct standards, and received the 2020 performance review in accordance with Defendant Clean Earth's procedures.  In short, Calder, as with the other OSRs, is a proper comparator for purposes of the 2020 performance evaluation and other treatment at work.

Calder's 2020 performance evaluation is also relevant to Hull's credibility.  It is undisputed that he reviewed and approved all OSR evaluations.  A reasonable juror could evaluate Calder's BRG performance (failed to meet his BRG in 2019 and 2020) and his "exceeds expectations" performance review against Plaintiff Schrof's BRG accomplishments and "meets expectation" evaluation and find Plaintiff Schrof's rating as unworthy of credence.

For these reasons, Plaintiff Schrof should be permitted to introduce Calder's performance evaluation into evidence and related testimony.

## POINT VI

### RESPONDING TO POINT VIII:  EXCLUDE EVIDENCE, TESTIMONY OR ARGUMENTS OF DEFENDANT CLEAN EARTH'S RECORDING POLICY

Defendant Clean Earth seeks to exclude evidence, testimony or arguments regarding the change to its recording policy after Plaintiff Schrof requested to tape the management meetings "because it is irrelevant and prejudicial."  Defendant Clean Earth's relevancy argument is based on the erroneous proposition that, in order for the recording policy to be relevant, it must be an act of retaliation.  Not so.  The change to the recording policy -- immediately after Plaintiff Schrof requested to record the sales management calls -- is relevant to Defendant Clean Earth's credibility and motive as it relates to those management calls as well as Plaintiff Schrof's state-of-mind regarding those retaliatory sales calls.  As alleged in the Complaint and Jury Demand at ¶¶ 50-77:

> 50.    On April 14th, Plaintiff Schrof was informed that going forward she was required to have daily sales calls with Hull and Hershkowitz.
>
> 51.    There were no performance issues necessitating this unreasonable monitoring and supervision.
>
> 52.    Upon information and belief, no other male outside salesperson was subject to this type of monitoring or supervision.
>
> 53    The daily sales calls made no sense because Plaintiff Schrof had been a top sales performer year in and year out for Defendant Clean Earth.
>
> 54.    This daily monitoring and supervision were implemented to demoralize and humiliate Plaintiff Schrof.
>
> 55.    As a result of the discriminatory and retaliatory treatment, Plaintiff Schrof asked to record the meetings.
>
> 56.    Defendant Clean Earth failed to respond directly to this request and instead implemented a new work policy forbidding recording meetings.

17

57.    Upon information and belief, Defendant Clean Earth wanted to conceal these meetings (because they were baseless), rather than have objective and variable confirmation of what *exactly* was discussed between Plaintiff Schrof and her supervisors.

It is undisputed that, after Plaintiff Schrof requested to tape the management meetings, Defendant Clean Earth immediately adopted an "updated Clean Earth Recording Policy" which specifically forbade recording meetings or conversations. (Docket No. 141-6; Schrof Dep. Tr. 150:7-12)  Your Honor held that there existed a fact dispute regarding the management calls:  on one hand, Mr. Hull claimed that Plaintiff Schrof asked for the calls (which she denies), yet on the other hand, Mr. Hershkowitz did not believe that Plaintiff Schrof requested the calls.  (Compare Hull Dep. T1 23116:234:19 with Hershkowitz Dep. Tr. 46:17-20; Docket No. 116 at 13-14 (Section F, Plaintiff's sales calls with management); see also Docket No. 116 at 14 ("Plaintiff describes the calls as humiliating, demeaning and demoralizing"))

As it related to her request to record the daily sales calls, Plaintiff Schrof testified:

QUESTION:  Was that on a phone call or in person?

ANSWER:  On a phone call.  And then again on April -- I believe April 9th after I started the phone call -- this is with Alan and James.  *I asked to record the call because, like I said, things are going sideways here.  It doesn't seem -- I don't feel comfortable what's going on, I'm not liking what I'm hearing.  These accounts are getting taken, average review, still not addressing my generator director, not responded to any of my emails.  I asked to record the call and he says no.  We have our call -- I said again, I think you guys are coming after me, you're attacking me, you're trying to get rid of me and sexual discrimination and then five days later magically a memo comes out from HR stating that we cannot record conversations.  So I know he's talking to HR.*

(Schrof Dep. Tr. 149:5-25) (Emphasis added)  Thus, Plaintiff Schrof's desire to record the management calls and Defendant Clean Earth's corresponding denial based on the policy update is relevant to her state-of-mind regarding those calls.

18

A reasonable juror could find it suspicious and incredible that Defendant Clean Earth forbid Plaintiff Schrof to record the daily calls and went so far as to change its recording policy. A reasonable juror could believe that a tape recording is the best and most reliable method of determining what was said by whom during those sales meetings. That reasonable juror could believe that such a tape recording would and should benefit both parties if they were true and genuine in their purpose. That reasonable juror could determine that the denial based on an "updated Recording Policy Guidelines" undermines the validity and credibility of those calls. That is to say that if these daily sales calls were legitimate and in good faith then Defendant Clean Earth should not have had any issue with recording them verbatim and arguably, to avoid any confusion, should have wanted them recorded. A reasonable juror could find that the updated guidelines was an effort to conceal the substance of the daily calls because there was no valid reason or purpose for them. In point of fact, Plaintiff Schrof "asked to record the call because...things are going sideways here... I don't feel comfortable with what is going on. I'm not liking what I'm hearing...We have our call - I said again, I think you guys are coming after me, you're attacking me, you're trying to get rid of me and sexual discrimination and then five days later magically a memo comes out from HR stating that we cannot record conversations." (Schrof Dep. Tr. 149:5-25)

In conclusion, the evidence surrounding Defendant Clean Earth's update to its recording policy immediately after Plaintiff Schrof requested to record the retaliatory management sales calls is relevant and admissible to the parties' state-of-mind and credibility as well as corroborating evidence that the management calls, in fact, took place and when they took place.

19

## POINT VII

### RESPONDING TO POINT X:   EVIDENCE REGARDING PLAINTIFF SCHROF'S BUDGETED REVENUE GOAL IS ADMISSIBLE AT TRIAL

Defendant Clean Earth asserts that evidence relating to Plaintiff Schrof's BRG is irrelevant. This argument narrowly analyzes this evidence and its importance to Plaintiff Schrof's state-of-mind and protected conduct proofs necessary to support her retaliation claim.  Put simply, this evidence is relevant to Plaintiff Schrof's state-of-mind when she complained to Hull on January 14, 2021 about discrimination.  The fact that Plaintiff Schrof had the highest BRG of all OSRs between 2018 and 2020 bears on her credibility and good faith when she complained to Hull in January 2021.  Her beliefs and perceptions of her BRG, compared to her male comparators, are relevant to her reasonable and good faith belief that she was being discriminated against because of her gender.

Likewise, this evidence is relevant to the manner in which Hull responded to Plaintiff Schrof's complaint.  Hull was obviously aware that Schrof had the highest BRG ($23.9 million) (which was a several-fold multiple of several male OSRs and which she obtained 97%.  This evidence is relevant to his state-of-mind in connection with his outright dismissal ("ridiculous") of Plaintiff Schrof's discrimination complaint.  Moreover, a reasonable juror could second-guess the alleged legitimate reasons for removing Plaintiff Schrof's Key Accounts and removal of sales leads, given Plaintiff Schrof's continued high performance associated with her significantly higher BRG than her male peers or it could impact a reasonable juror's view of Plaintiff Schrof's 2020 and 2020 performance.

Next, Defendant Clean Earth's arguments that the probative value of that evidence is substantially outweighed by the danger of unfair prejudice is baseless.  All of Defendant Clean

20

Earth's alleged concerns (a-e) can be addressed with a proper limiting instruction to the jury regarding the nature of the evidence and how it must be considered.

Thus, the documents Defendant Clean Earth seeks to exclude in connection with this motion should be denied:

| | | |
|---|---|---|
| 1 | CE4020-4022 | 1/12/21 Email string from Crawford regarding coding of accounts, weekly SVC calls and Casey Kersey's non-attendance; |
| 2 | | Clean Earth's Supplemental Answer to Interrogatory No. 3; |
| 3 | CE2004-2007 | 2/27/20 Email string concerning Plaintiff Schrof's 2019 BRG and confirming that she exceeded her BRG as well as emails re: unpaid generator direct commissions; |
| 4 | CE4210 | Plaintiff Schrof's 2020 commission run; and |
| 5 | CE4211 | Plaintiff Schrof's 2021 commission run. |

All of these documents are relevant to Plaintiff Schrof's state-of-mind when she complained to Hull as well as Hull's state-of-mind in responding to her complaint.

## POINT VIII

### RESPONDING TO POINT XI:   EVIDENCE REGARDING PLAINTIFF SCHROF'S COMPLAINTS CONCERNING UNPAID COMMISSIONS, HOLDBACKS AND OVERAGES ARE ADMISSIBLE AT TRIAL

Defendant Clean Earth's request that the Court exclude from trial any and all evidence related to commissions, holdbacks or overages is vague, unduly broad and lacks any meaningful basis on which the Court can rely to conclude that the testimony and documents it seeks to exclude are not relevant.  Plaintiff Schrof does not suggest that this evidence is relevant to prove claims the Court struck at summary judgment.  Instead, this evidence is relevant to Plaintiff Schrof's state-of-mind, credibility and good faith when she complained of gender discrimination.  This evidence can be admitted with the proper limiting instruction to avoid any prejudice to Defendant Clean Earth.

The documents Defendant Clean Earth seeks to exclude are:

| | | |
|---|---|---|
| 1 | CE3211-3212 | 1/6/21-2/15/21 Emails from Plaintiff Schrof to Hull requesting resolution of generator direct commissions; |
| 2 | CE4717-4721 | Clean Earth's Incentive Sales Plan for OSRs; |
| 3 | CE4023-4026 | 1/18/21 Email string where Plaintiff Schrof questions the coding of the Delta account to Crawford; |
| 4 | CE189-192 | 7/20/20-7/23/20 Email string regarding loss of job and Hershkowitz's request that Plaintiff Schrof obtain information on the reason; |
| 5 | CE3803-3805 | 3/8/21 Email string in which Plaintiff Schrof explains why Clean Earth lost a job opportunity; |
| 6 | CE3668-3678 | 3/8/21 Email from Kaila Ilyes ("Ilyes") to Crawford and Hershkowitz blaming Plaintiff for lost job; |
| 7 | CE3739-3741 | 10/15/20 Email regarding recoding Plaintiff Schrof's accounts as House Accounts to "wake up Jen"; |

22

| 8 | CE2359-2367 | 6/25/20-3/19/21 Email string regarding Plaintiff Schrof's follow-up for generator direct commissions; |
|---|---|---|
| 9 | CE2326-2359 | 6/29/20-3/18/21 Email string regarding Plaintiff Schrof's follow-up for generator direct commissions; |
| 10 | CE3002-3003 | 3/19/21 Email string between Plaintiff Schrof and Hershkowitz regarding generator direct commissions; |
| 11 | CE509-522 | 8/31/20-3/19/21 Email string regarding Plaintiff Schrof's follow-up for generator direct commissions; |
| 12 | CE3690-3691 | 3/16/21 Email string in which Hull directs that a hold be placed on paying commissions to Plaintiff Schrof for certain accounts; |
| 13 | CE3481-3482 | 4/30/20 Email concerning responsibilities of OSRs/ISRs including commission; and |
| 14 | CE2294; CE2223-2224 | 2/6/21 Email from Plaintiff Schrof regarding the belief that she hit budget in 2020 and supporting documents. |

Exhibits 1, 8, 9, 10, 11 and 12 go directly to Plaintiff Schrof's state-of-mind given her ignored requests for generator direct commissions. Exhibits 3 and 7, which concern the improper recoding of Plaintiff Schrof's accounts is relevant for the same reason. This is particularly true with respect to Exhibit 3, which concerns an adverse coding activity four (4) days after Plaintiff Schrof complained of discrimination to Hull.

Defendant Clean Earth fails to provide a basis for excluding Exhibit 2, its Incentive Sales Plan. That particular document is relevant to several issues, including the removal of Plaintiff Schrof's Key Accounts and inside sales leads. Finally, Defendant Clean Earth's argument fails to address Exhibits 4, 5 and 6, all of which should be admissible.

23

## POINT IX

### RESPONDING TO POINT XII:  DR. DAVID McCLURE WAS IDENTIFIED AS A TREATING PHYSICIAN, HIS MEDICAL RECORDS WERE PRODUCED IN DISCOVERY

Defendant Clean Earth's sleight of hand tactics are highlighted in its attempt to limit Dr. McClure, Plaintiff Schrof's treating physician during her employment at Defendant Clean Earth, "to that of a fact witness."  Plaintiff Schrof identified Dr. McClure in her written discovery and provided executed medical authorizations.  Defendant Clean Earth received all of Dr. McClure's medical records during discovery but failed to depose him.  For the reasons detailed below, Dr. McClure can opine to causation, prognosis and other matters based on his actual treatment and observations of Plaintiff Schrof.

To be clear, Plaintiff Schrof identified Dr. McClure in her written discovery response and provided his medical records without objection.  In footnote 3, Defendant Clean Earth claims oddly that it was "separately filing a motion to strike Dr. McClure as a witness based on failure to disclose, . . . ." (Def. Br. at p. 23, fn. 3)  It filed no such motion and, thus, waived it.  Similarly, Defendant Clean Earth states coyly that Dr. McClure "was not named by Plaintiff in written discovery as a person with knowledge as to the allegations in her Complaint, and, therefore, Plaintiff did not disclose a summary of his knowledge (which could indicate his testimony)." (Def. Br. at p. 24)  But, Plaintiff Schrof identified Dr. McClure as her treating physician in response to Defendant Clean Earth's Interrogatory number 6.[2]  In connection with that discovery, Plaintiff

---

[2]     For any injuries or damages you allege you sustained as a result the allegations in this lawsuit, identify all health care providers from whom you sought treatment of any kind since January 1, 2018, including the date(s) of treatment received by you.

David McClure, M.D.
University of Maryland
Upper Chesapeake Health
615 West MacPhaul Road

24

Schrof provided executed medical authorizations for Dr. McClure.  Defendant Clean Earth submitted those authorizations to Dr. McClure who, in turn, provided Plaintiff Schrof's medical records and file without objection.  Defendant Clean Earth never attempted to depose Dr. McClure.  Compare Hall v. Sykes, 164 F.R.D. 46, 48 (E.D. Va. 1995).  This is no basis whatsoever to strike Dr. McClure as a treating physician.

Next, contrary to Defendant Clean Earth's machinations, as a treating physician, Dr. McClure can opine to causation and prognosis of Plaintiff Schrof's medical conditions **learned during his treatment** without any written expert report or expert disclosure under Fed. R. Civ. P. 26.  See, e.g., Sullivan v. Glock, Inc., 175  F.R.D. 497, 499 (D. Md. 1997) (*citing* Shapardon v. West Beach Estates, 172 F.R.D. 415, 1997 WL 222350, at *1 (D. Haw. 1997) ("[T]reating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury.  Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirement of Rule 26(a)(2)(B)."); Lauria v. National R.R. Passenger Corp., 1997 U.S. Dist. LEXIS 3408, 1997 WL 138906, at *2 (E.D. Pa. March 24, 1997) ("[A] court must inquire whether the treating physician acquired his opinion as to the cause of the plaintiff's injuries **directly through his treatment of the plaintiff. . . .** If  so, then even though the treating physician may be deposed, he is not required to file the written report required by Rule 26(a)(2)(B).  In this situation, testimony as to whether the injuries for which the physician treated the patient are causally related to the accident are within the scope of the patient's care and

---

Suite 106
Bel Air, Maryland  21014

\* \* \*

Plaintiff has enclosed authorizations to permit Defendant Clean Earth to obtain medical records and requests that she be copied on all medical records received pursuant to said authorizations.  Response to Interrogatory No. 6

25

treatment."); Hall v. Sykes, 164 F.R.D. 46, 48 (E.D. Va. 1995) ("If a treating physician forms an opinion of the causation of an injury to a patient and the prognosis of the patient's condition *during the treatment then such* opinion may be expressed by the treating physician without the necessity of a report under Fed. R. Civ. P. 26(a)(2)(B).... However, if a physician, even though he may be a treating physician, is specially retained or employed to render a medical opinion based upon factors that were not learned in the course of the treatment of the patient, then such a doctor would be required to present an expert written report."); Piper v. Harnischfeger Corp., 170 F.R.D. 173 (D. Nev. 1997) (same); and Garza v. Abbott Lab., 1996 U.S. Dist. LEXIS 12506, 1996 WL 494266 (N.D. Ill. Aug. 27, 1996) (same) (emphasis added).

Notwithstanding this black letter law contained in Sullivan, *supra*, the case relied primarily on by Defendant Clean Earth, it cherry-picks and manipulates a single sentence of dicta -- "A party may not circumvent the requirements of Rule 26 by employing a witness, like a treating physician who treated an injured party, to provide testimony extending into classic expert opinion regarding causation and prognosis." -- from Nat'l R.R. Passenger Corp. v. Ry. Express, LLC, 268 F.R.D. 211, 216 (D. Md. 2010), an inapposite case involving whether railroad employee could serve as a lay expert witness. However, like Sullivan, *supra*, a full and fair reading of Nat'l R.R. Passenger Corp., *supra*, holds that treating physicians can opine to causation and prognosis learned in the course of treating the plaintiff. See, e.g., Nat'l R.R. Passenger Corp., *supra*, at 217 (*citing* Thomas v. Consolidated Rail Corp., 169 F.R.D. 1, 2 (D. Mass 1996) (requiring expert reports from plaintiff's treating physicians who were going to offer testimony based on 'professional expertise going beyond treatment *per se*.'") and Hall, *supra*, at 48 (requiring expert reports where a treating physician formed a medical opinion based upon factors not learned in the course of treating the patient.")). Thus, Defendant Clean Earth's reliance is Nat'l R.R. is baseless inasmuch as it holds

26

that a treating physician can testify to causation and prognosis so long as it is based on information learned in the course of treating the plaintiff.

In this case, Plaintiff Schrof intends to question Dr. McClure regarding his treatment, diagnosis, prognosis and causation relating to matters learned in the course of treating Plaintiff Schrof, to include the facts and opinions surrounding his decision to place Plaintiff Schrof on a 2-week medical leave. As discussed in the Court's Opinion (Docket No. 116 at 14), "[on] April 16, 2021 Plaintiff's physician advised that '[d]ue to ongoing stress related to issues from work,' causing mental and physical ailments, Plaintiff required medical leave from April 19 2021 to May 3, 3021." See also CE_000625 (Schrof's April 18, 2021 email to Defendant Clean Earth "attaching a letter from my doctor stating a 2 week medical leave effective Monday due to vertigo, high blood pressure, migraines, gastrointestinal issues, and not sleeping."). For the reasons discussed above, Dr. McClure, as Plaintiff Schrof's treating physician, can opine on diagnosis, prognosis and causation issues and observations associated with his actual treatment of Plaintiff Schrof. Plaintiff will not present Dr. McClure with any hypothetical questions and, thus, consents to that aspect of Defendant Clean Earth's motion.

27

## POINT X

### PUNITIVE DAMAGES ARE A JURY QUESTION AND BIFURCATION OF THE TRIAL IN THIS MATTER IS NOT WARRANTED UNDER THE CONTROLLING LAW

For the reasons articulated in Point I, Defendant Clean Earth's attempt to preclude Plaintiff Schrof from seeking punitive damages should have been done at the summary judgment stage, not in an *in limine* motion. See Louzaon supra, at 561 (*In Limine* motion is not vehicle for claims that should have been made at summary judgment). It is undisputed that Defendant Clean Earth failed to move on punitive damages at summary judgment. The *in limine* motion is nothing more than a summary judgment motion in disguise and should be rejected.

Moreover, Defendant Clean Earth fails to meet its burden to justify bifurcation of trial on liability and damages. In addition, the entire bifurcation argument is predicated on an outdated and inapplicable case: Bowie v. Sorrell, 209 F.2d 49, 51 (4th Cir. 1953). In Plyler v. Cox, 145 F.4th 501 (4th Cir. 2025), the Fourth Circuit affirmed the trial court's denial of a motion to bifurcate in a case involving punitive damages. In so doing, the court articulated the relevant standard, as follows:

> The trial court possesses discretion to bifurcate a trial into a liability phase and damages phase "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Cox, as the party requesting separate trials, "bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party."

Id. at 513. See also Hinman v. Clean Cut Landscaping &, Excavating, LLC, No. CV CBD-15-1364, 2016 WL 8670008, at *3 (D. Md. Sept. 30, 2016) ("Denying the request for bifurcation of liability and damages would not significantly prejudice Defendants. Equally, bifurcation would not 'expedite' or 'economize' the pending trial.")

28

Here, Defendant Clean Earth's motion fails to cite the applicable standard, and, more importantly, fails to explain how bifurcation in this case would meet each element of its burden on the issue. It cannot be seriously argued that bifurcation would expedite or economize the trial; indeed, any bifurcation would lengthen the trial and delay matters. Moreover, all of the proofs that Defendant Clean Earth claims to show that there was no malice or animus will come in during the liability phase and, thus, are duplicative. (Def. Br. at 28 (a-i)) Defendant Clean Earth essentially argues that, absent a finding of liability, there is no need for the jury to hear evidence or consider Plaintiff Schrof's damages claim. This, of course, is true in myriad cases, including most tort actions and virtually all employment matters. The mere fact that an award of damages is conditioned upon a finding of liability cannot possibly be sufficient to support bifurcation. *Compare* Plyler and Hinman, *supra*. Defendant Clean Earth has not and cannot offer sufficient justification for bifurcation and, therefore, its request should be denied.

29

## CONCLUSION

For the foregoing reasons, Plaintiff Schrof respectfully requests that this Court deny Defendant Clean Earth's *in limine* motions.

Dated: January 12, 2026

Respectfully submitted,

_____/s/_____
Joseph B. Wolf (Fed. Bar No. 27882)
  joseph@jwolflegal.com
**WOLF LEGAL, LLC**
37 Walker Avenue, Second Floor
Pikesville, Maryland 21208
Telephone: (410) 736-8977
*Attorney for Plaintiff*

Kevin Barber, Admitted *Pro Hac Vice*
kbarber@kbarberlaw.com
Peter J. Heck, Admitted *Pro Hac Vice*
pheck@kbarberlaw.com
**BARBER LAW, LLC**
98 Washington Street
Morristown, NJ 07960
Telephone: (973) 401-0064
*Attorneys for Plaintiff*

30

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2026, a copy of the foregoing was served via the ECF electronic filing system upon all counsels of record registered to receive such notifications.

_____/s/_____
Joseph B. Wolf

31